Good morning, afternoon, may it please the court. My name is Molly Carlin. I'm an assistant federal public defender in the District of Arizona and I represent Miss Seraphina Charley. I'd like to reserve three minutes for rebuttal. Now the government's theory of this case is that Miss Charley was a violent drunk who assaulted her boyfriend because that's what she does. This was the only reason the government offered for why she would assault her boyfriend, not acting in self-defense. And so I'd like to start with the 404 issue and the critical misconduct issues and I will try to reach sufficiency. Now under Rule 404B, the government bears the burden to precisely articulate a propensity-free chain of reasoning connecting the prior act evidence to the charged crime. The government has not done that here. In fact, the explanation they offered was a direct explanation that the fact that she did these things before helps to show that she did it here. Well it only helps to show that if you infer that she had a propensity to do that. Now neither of the two incidents here, the incident in which she kicked a door and yelled at her stepmother or in which she hit her sister with a coffee cup, possibly in self-defense, neither was similar to the hit her boyfriend in the head with a rebar causing him serious injury. It doesn't show, neither act shows her intent because what she would intend to do with respect to somebody else doesn't say anything about whether Merle Begay attacked her, causing her to reasonably fear for her life and hit him in self-defense. Why isn't there a proper inquiry that, so why doesn't it show intent? If the government's theory, as I understand, is when she gets drunk she has intent to harm people close to her, you know, her sister or her mother and her boyfriend here. Why isn't that a proper inference to draw from the three incidences of her being drunk and attacking a close family member? Well Your Honor, this court has held that an intent to assault a different person on a different person. Why would that be the case? Why wouldn't that be the case? Well, Your Honor, it doesn't say anything about what Merle Begay did. It doesn't say anything about whether she had a reasonable fear of Begay. If she, if the government says, well, she intends to do this sometimes, that's really, she has a propensity to do this. This is what she does. And so that's character evidence. And she likes hitting her close family members. If she likes hitting close family members, that's, that's character evidence. That's her character. She likes hitting family members. Isn't that also intent though? I think intent would have to show what she, well, what she intended to do. Here she admitted she intended to hit Merle Begay. There's no question. The only question is why she did that. And so, and so, you know, I think that's, if she has a tendency to do something or to act a certain way, that's a propensity. She has a propensity to do that. Now, the government also argues to show lack of mistake or accident. But again, she didn't argue that it was a mistake or an accident that she hit him. She said, I did this out of self-defense. I meant to hit him and this is why I did it. Now, this evidence was extremely harmful. The courts have... Can we go back to the lack of mistake? Why doesn't it rebut the evidence that, that, that Ms. Charlie put on that he was the initial aggressor? If, if, if evidence shows that she likes to hit family members when drunk, doesn't that rebut that inference that he was the initial aggressor? Well, Your Honor, it doesn't say anything about what she would do if, if faced with a, if faced with someone who is attacking her. And it, it doesn't show anything about her, her reasonable fear. And I think we're talking about, I mean, I think your question was about mistake or accident. And she, again, she didn't argue that. She argued that it was intentional. But her reason was, was self-defense. Now, this was also irrelevant, excuse me, it was overly prejudicial under Rule 403. The government actually doesn't argue that it wasn't prejudicial. They say that it was probative, but it was not probative for two main reasons. One, she was not charged with a crime as to either incident. The stepmother incident clearly didn't involve any crime. It didn't even involve an assault. In the Hannah incident, it's unclear, unclear at best who started it. Hannah actually said she pushed first. And her testimony was consistent in that she was the one who started the physical altercation. And this was extremely prejudicial. There was detailed testimony about a specific thing that she did. The government introduced evidence of photos of Hannah's injuries. And also offered the testimony of the officer who responded to the Hannah incident, who was not a precipient witness to that incident, who nonetheless stated that she had committed aggravated battery, whereas there's no evidence that she was even arrested. So, this propensity argument, both with respect to 404 and 403, was then emphasized in the government's closing, when the described the other incidents and described them as familiar. This is what she does. That's propensity. Ms. Carlton, may I ask you, how was this claimed error preserved at trial? This was preserved in both written motions. It was repeatedly argued at trial, and it was preserved immediately before the first incident came in, when the defense said, this is propensity evidence. It was, I don't think there's any dispute, I don't think there could be any dispute, that this was well preserved. Okay. Now... Counsel, but didn't you put on your own propensity evidence when you said that Begay attacked her multiple times in the past? That was not propensity evidence, Your Honor. Under this court's precedent, that was admissible to show her state of mind, not to show what Begay's character was, or whether he's a violent guy. It was to show that she reasonably feared him, because he had attacked her in the past. There's no... But wasn't, isn't that propensity also, couldn't that be construed as propensity evidence, that he attacked her in the past, and so therefore, he attacked her again? Um, I, if it, hypothetically, not saying it was, if it was, Your Honor, then it would be a separate purpose, just like under 404-B, even evidence that would tend to show propensity is admissible, if it also goes to a specific 404-B purpose. So, the government has provided no authority for the concept that her introducing specific acts to show her state of mind allows the government to then introduce a tit-for-tat to show that, well, she's also violent when she drinks. Doesn't 404-A-2-B provide for that almost exactly? That if the defendant puts on character traits of the victim, the government can do the same for, for the defendant? Your Honor, 404-A is specific and limited. It specifically limits the evidence that the defense can introduce under 404-A, character evidence that they can introduce to opinion or reputation testimony. It then, in turn, if the defense does that, limits the government's response of evidence to opinion and reputation testimony, except in one instance not admissible here, or not relevant here. But the defense didn't limit it to opinion or character. They went through specific incidences of the gay's violent actions. They introduced other witnesses as well to that, correct? Yes, Your Honor, but that wasn't under 404-A. It wouldn't have been admissible under 404-A. What was it admitted under? It was admitted under the case we've cited is United States v. James. There's also a case, United States v. Sands, which immediately follows James, which says that evidence, sorry, evidence that goes to a defendant's state of mind, meaning that would be limited to either acts that he committed against her or acts that she witnessed or knew about, not unrelated acts that he might have committed against, you know, other people that she had no knowledge of. Just acts that she had knowledge of are admissible because they would affirm her reasonable fear on the night in question. So that was not reputation or opinion testimony, and it was not admissible as character evidence. Well, couldn't the district court have construed it as opinion or reputation evidence? Because, you know, when the district court made the ruling to allow the government to admit the other act's evidence, all the district court heard was evidence that the gay attacked her in the past and she thought she was going to kill her this time because he attacked her in the past. So that seems to be precisely what 404-A is getting at. I mean, I think, Your Honor, all I can say is that 404-A says opinion or reputation. The specific acts that she described were not about his reputation for violence in the community. It wasn't her opinion as to whether he was violent. These were specific things that he did that caused her to fear for her life. So if the court did believe that it was introduced under 404-A, that was it seems like to fit 404-A exactly. I mean, I don't think it fits. I think it would be error, not merely an abusive discretion, because, again, 404-A is only opinion or reputation, and then same for the government's response. Now, to be clear, she did introduce evidence of new big gay in the community, and he thought big gay was a violent guy. That was 404-A, and then that allowed the government to introduce evidence through opinion or reputation that she was violent, which the stepmother did. That's wholly separate from the specific acts that big gay committed against her that were admitted for state of mind and the specific acts that she committed that the court ostensibly introduced under 404-B. And I'll note the court did give a 404-B instruction at the end of the case, so it seems the court did think that this was 404-B evidence limited to the 404-B purpose. Well, didn't the court only allow the government to introduce the other acts evidence after the defense introduced the character traits of the defendant, which suggests it's a 404-A analysis, since they're allowed to rebut the same uses against the victim. I agree, Your Honor, that that's what the district court did. However, the government has introduced no authority to show that that's permissible. It appears the district court was kind of conflating 404-A and 404-B. Have you read the commentary to 404-A from 2000? It seems to have exactly hit this point. It says, this amendment makes clear the accused cannot attack the alleged victim's character and yet remain shielded from disclosure of equally relevant evidence concerning the same character trait of the accused. Well, Your Honor, that refers to character evidence, and under 404, character evidence is a 404-B2-B. The prosecutor must articulate in the notice the permissible purpose for which the evidence is offered. And 404-B1, evidence of any other crime, wrong, or act is not admissible to prove character. So I think when the commentary is referring to character evidence, they're referring to the type of character evidence that's admissible, which is opinion or reputation testimony. I want to try to highlight why this was harmful and address the most critical misconduct issues. This was harmful because the government had no other explanation for why she would do this. She hit her boyfriend in the head with a rebar and caused some serious injury. There was no other reason offered. They had no direct evidence to refute self-defense because they declined to call the one other percipient witness. And then the harmfulness was compounded when the government argued in closing that this showed her character and showed her, that described these acts as examples of how she hits people when she drinks. What about the false statement conviction? So with respect to sufficiency, Your Honor, there's no dispute about the law, but the government had to prove that she knew it was unlawful to lie. And that is a high bar because they have to prove she knew it was unlawful, not that she knew it was wrong or something you shouldn't do. And here, the evidence shows she had no explicit notice. There was no other testimony or evidence suggesting that she knew there was such a law. And that high bar is made clear by Ajoku itself. There, the defendant admitted on the stand that he knew it was wrong to submit false documents to the government. And there was evidence that he signed under penalty of perjury, a statement attesting that the documents were true and accurate. And the government, in its brief in opposition, argued there is no conceivable way that he believed that his actions were lawful. And for that reason, you should decline, sir. This error was harmless. The Supreme Court did not agree. Granted, vacated and remanded. This court then remanded for a new trial. So I want to briefly try to hit the two misconduct issues, in addition to the propensity argument that I discussed, the two other misconduct issues that I think are the most damaging, both of which were also preserved. Quickly, you're out of time, but go ahead quickly. Thank you. Let me reserve my last 14 seconds. We'll give you more time. Go ahead. Why don't you just tell me, can you tell me which of the misconduct do you think is the most egregious? There are two. The first is the risk-cutting statement, which the government agrees was not in evidence. The only question is whether it was harmful. And this was a serious accusation, in that she tried to blame Mr. Begay and hurt herself. It went to her credibility as to past abuse and the night in question. The other is the vouching, where the government told the jury what the victim would have said without allowing for cross-examination regarding his prior abuse, regarding the night of. This court has called that kind of vouching more prejudicial than the usual vouching. Okay. Counsel, I'll give you two minutes for rebuttal. I appreciate that. Thank you. Ms. DeLorde. May it please the court, my name is Carla Hodes DeLorde, and I represent the United States. I'd like to first begin where counsel left off, so I don't forget to address those issues. Quickly, with regard to the prosecutorial misconduct claims, regarding the risk-cutting incident, the government concedes that the prosecutor made a mistake and erred when she talked about the defendant cutting her wrist. But this error was harmless, given that it was a single misstatement in the entire case, and the overwhelming evidence about the defendant's lies in this case. This misstatement, like I said, it was single and isolated. It did not make reference to any to the defendant's guilt, and it was just along when the prosecutor was talking along the laundry list of lies that the defendant had made throughout the case, she mentioned this incident. It did not devastate the defendant's credibility because the government had already set forth sufficient evidence of all the lies the defendant had committed, and they were able to observe her during trial, and she did continue to lie even under oath at trial. Also, the court properly instructed the jury that the statements the lawyers made during closing were not evidence, and the jurors are presumed to follow the court's instructions. Unless there are no further questions on that, I'll briefly touch on the vouching. The government did not vouch about what the victim would have said had he been on the stand. Instead, the prosecutor correctly summarized the evidence that the defendant was not able to recall the events. There was testimony that he could not recall the events of the night. Agent Mulholland testified to that, and also the doctor who treated the victim also testified that with the type of severe head trauma he suffered and the fact that he was intoxicated, it would not be unreasonable for him not to remember, and so the prosecutor's comments were clearly based on this testimony and were not vouching, and she did not portray herself as a silent witness in the case. Regarding the insufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that defendant willfully lied to the FBI and knew that it was a crime to do so. And there's several pieces of evidence that support the sufficiency here. First, you can look at the defendant's familiarity with law enforcement in this case. Two weeks before the assault, the police had stopped her for an unrelated event, and she gave them a false name and date of birth and social security number. The morning then, the morning of the assault, when the tribal officer responded to the scene, she again gave a false name and date of birth, and interestingly is that she is 29 years old, but she gave a date of birth that made her 16, a juvenile, which is juveniles are treated differently in the legal system. In addition, the tribal officer asked her her Native American status, and she lied and said she was Hispanic. And Officer Totti, the tribal officer, testified during trial that it was important to know her Native American status because he did not have jurisdiction over non-natives. And so this, coupled with the fact that she also lied when they went to arrest her, and she again gave a fake name, shows that she has familiarity with law enforcement. This was not a new contact, and she was familiar with their ways. In addition, the nature of the lies she told. She made an affirmative call to 911 and gave an affirmative false report that somebody else had assaulted Mr. Begay, and then she also staged the crime scene. And after the assault, when she was in jail, she made the phone call to her boyfriend, where he told her, you shouldn't have lied to the police. That probably got you and made things worse. And she said, I know, and then she lamented that she almost got away with it. In addition to this, she continued to lie at trial, even after she had been sworn under oath, and she was facing a charge for making a false statement. It just, all this evidence goes to prove that she was willing to lie at any cost, and she didn't care, and a rational juror can look at all of this information, and using their common sense, infer that she knew it was unlawful to lie to the FBI that day. With respect to the other act evidence, I'd like to first put the other act evidence into perspective here. First, the other act evidence was properly admitted, and the jury was properly instructed, and the government properly argued it in its closing. Now, this prior act evidence was just a very small part of the government's case. It was presented only in rebuttal and in response, direct response, to defendants' claim of self-defense. This was not the focus of the government's case. The focus of the government's case were the lies, the continuous lies the defendant told throughout this entire case, the lack of evidence supporting her self-defense claim, and the fact that defendant was not justified in using the self-defense she did because she was not an imminent harm, and the court and the government also focused on the physical evidence of the showed that she did not have a valid self-defense claim. So this is prior act evidence. Mr. Lord, I'm having a great deal of difficulty understanding why the prior acts in this case, which did not involve any claims of self-defense, were similar to the acts involved in this case. I take Ms. Carlin's point that the only rational and reasonable use of this evidence of her two prior acts was to show a propensity for violence. Your Honor, I disagree with that. The proper purpose of the prior acts, they were admitted under a proper purpose for Rule 404B, and that was to show her intent and motive and to rebut, most importantly, to rebut her claim of self-defense. But intent evidence comes in whether it was the claim of mistake or inadvertence or accident. But there's no claim here that she didn't intend to hit Begay over the head with a rebar. How does it go to intent? It goes to intent in that it rebuts her claim of self-defense. As the government stated in its motion to admit this evidence, this was similar in nature because it showed that she intentionally had hit her family members, a close family member, and the intentional action of hitting her close family members and the intentional action of hitting Begay was not a dispute. But it goes to show that she was the initial aggressor, which specifically goes to rebut her claim of self-defense. And that was a proper purpose. It shows that she was the initial aggressor in these events, and that goes to her intent, and it goes directly to rebutting her claim of self-defense. And it was also, so it was proper, it was proper under both, both 404B to rebut her claim of self-defense to show that she was the initial aggressor. Councilwoman, what exactly was the intent that the three incidents, the two prior incidents show? An intent that she likes to hit family members when drunk? How would you classify what that intent is? The intent is, is that, well, the intent would be that she's the initial, initial aggressor, that she got upset and hit them. It's not, it wasn't a claim of self-defense. I'm sorry, I couldn't quite hear the whole question. That is the initial aggressor, right? Yes, she's the initial aggressor. And so that goes directly to the initial aggressor. That's propensity evidence. That's character evidence. No, Your Honor, it's not. It's showing that it's, it's not propensity, it's not propensity evidence. It's showing that she had intentionally, she intentionally hit her family members. She intentionally hit the gay, and that goes directly to rebutting the claim of self-defense. And it was also properly admissible under Rule 404A, once she introduced, once the defendant. Let's, let's stick with 404B first. So, so it's clear she hit the gay. So you're saying that because she hit two other family members before, intentionally, that on this case, the evidence that she had the same intent to hit the gay and was the initial aggressor. It goes to show that she was the, right, that it goes to rebut her claim of self-defense, and that she was the initial aggressor in this case. It goes, it was for, it was admitted for the proper purpose to show intent and motive, and most specifically to rebut her claim of self-defense. And it doesn't matter that the district court didn't say the self-defense part. No, because it does, that does not matter, because that could be, that's a part of, that could be a part of the intent and the motive, just so that it's to rebut the self-defense. So intent and motive covers that. And because, you're saying that because intent is a part of self-defense, is an element of self-defense, you have to have the right intention. Right, right, it goes exactly. Okay, and so now, now on the 404A part, the judge didn't make a ruling on 404A, didn't he made it on 404B? He did not make an express ruling on 404A. What happened is, when this came up, during the cross-exam of defendant, they were asked, the government asked if it would be allowed to go into specific to the prior acts. And the government chose not to do so at that point, and did so in rebuttal. But at that point, they had the discussion, and the government, excuse me, the court said, absolutely, you can go into that, because they opened the door. So the court didn't make an express ruling, and didn't cite 404, but it specifically, in that conversation, said, you know, the door is wide open, this is at ER 802, the door is wide open, absolutely, you will be allowed to do that. Now the government did not cross-examine the defendant on anything of that nature. Instead, the government waited until its rebuttal case, and put it on in rebuttal. And again, this goes to my initial comment, these this to come in under 404B, any error was harmless, and not in the use of discretion, because this was a small part of the government's case. This was not the focus of the government's case at all. The focus of the government's case were on the lies she told, the... If we think that it was proper under 404A, but not 404B, do you think we can affirm, because we construed the district court's ruling under either? Correct. It was properly admissible under both 404A and 404B. So if you find one or the other, it's proper, and this court can affirm for either of those reasons. As an alternative, if this court were to find it wasn't improper, for some reason, the government argues that it is proper, then the government contends that the admission of it was not an abuse of discretion, because it was harmless error, given the strength of the government's case, the implausibility of her self-defense, and the court's curative instructions, or limiting instructions, as to what the jurors could consider the evidence for. Counsel, what's your response to opposing counsel's argument under 404A, it's that type of evidence is limited to character, opinion, or opinion evidence, and not about specific incidences? Well, what I think happened in this case is that the defendant in, I think that what happened is the defendant conflated character evidence with the prior act evidence when she got into this during trial. And so because of that, once she opened the door, and she conflated this by presenting this evidence, and they were on discussion about whether if they were going to go down this road and introduce these prior acts by the victim, if the government would be able to rebut those with prior acts. This was all plead out, or articulated in the pleadings, and discussed and argued before our court. And in fact, defense counsel even said, if the government is allowed to go into prior acts, if they're able to come back on rebuttal with prior acts, we ask that we could have surrebuttal. And the court said, when that time comes, we'll wait and see what happens. And when that time comes, if you present the same argument that you've presented to me right now, I will allow you to go into surrebuttal. And when the time came, specifically after the government ended rebuttal, and they were deciding to figure out if they were doing closing arguments the next day or not, the government said, defense mentioned maybe wanting to go into surrebuttal. I want to find out if they're really going to do surrebuttal or not. And the defendant said, no, we are not doing surrebuttal. So this was clearly talked about ahead of time. And like I said, I think the defendant conflated the two when it presented it, the character and the prior act. And then because they opened the door, the government was properly able to respond. And as Judge Bumate mentioned, the 2,000 amendments to Rule 404, I see that I'm over my time. I'd like to finish. Go ahead, finish. Go ahead. Thank you. The 2,000 amendments specifically allow for this, under Rule 404a, that once they open the door, the defendant is able to come back and rebut that. So for all these reasons. Okay, thank you. We ask that you affirm. Thank you. Ms. Carlin, we'll give you two minutes. I appreciate that. Thank you, Judge Bumate. Now, the government suggests that the propensity evidence or the other acts were a small part of their case. By the end of the case, they were not. The jury had heard three witnesses. They were the last three witnesses they heard. The prosecution emphasized these acts in their closing argument. And I just want to address the point that they argue that her intent was to be the initial aggressor. Even assuming that that is a proper showing of intent, neither of these actions show that. There was no physical altercation with the stepmother and the sister. It was, at best, unclear who started it. It certainly does not show that she's the initial aggressor. I also want to point out that with respect to harmless error analysis, this goes to the risk cutting, 404, 403. Credibility is not for this court to determine on harmless error review. Whether her testimony was persuasive is up to the jury. And so that's not a point for consideration. However, I will note that her lies were explained by her fear of retaliation, her lies about who did it, that somebody else did it, make it seem like someone else had done it. She persuasively explained that his family and friends were dangerous. She was afraid they would come after her. Ms. Carlin, can I ask you a question? Yes. So do you believe, as Ms. DeLore said, that the self-defense falls apart with the proof of the violent penchant for violent conduct? Essentially, she's saying that once they were able to prove the penchant for violent conduct, that the self-defense falls apart. Do you agree with that? And if not, why? Well, I think her self-defense case was strong. I do agree that this propensity evidence was extremely damaging because it's so persuasive. But she had a strong case. She gave a consistent explanation on the stand of what happened. She had a good explanation for why she had lied about what happened. But I mean, we're going to the elements of self-defense. What I'm trying to understand is, when you show the penchant for violent conduct, does that undo self-defense? If I may answer, I see I'm over time. Well, it doesn't undo self-defense in that if she reasonably feared for her life, whether she's a violent person or not, or has hit people in the past or not, she has a right to defend herself if she reasonably fears a serious injury or death. And so it doesn't undo it. If she was the initial aggressor, does that rebut her self-defense claim? If she was the initial aggressor that night, sure. But the fact that even if she had been the initial aggressor in fights with other people in the past, that doesn't negate her right to act in self-defense when her boyfriend attacks her and causes her to fear for her life or her safety. I will ask that you reverse. Thank you. Thank you, counsel. Appreciate that. Thank you.
judges: Bea, Cardone, Bumatay